**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SONIA ROSS-BENNETT,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-CV-1117-BJ** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sonia Ross-Bennett ("Ross-Bennett") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. For reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

## I.   STATEMENT OF THE CASE

Ross-Bennett filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). On February 19, 2018, Ross-Bennett filed an application for SSI, alleging that her disability began on February 19, 2018. (Transcript ("Tr.") 180-194.) Ross-Bennett's application was initially denied on July 20, 2018, and upon reconsideration on February 26, 2019. (Tr. at 81-96; 97.) Ross-Bennett subsequently filed a written request for a hearing before an ALJ on April 3, 2019. (Tr. at 118-120.) A hearing was held on February 5, 2020, in Fort Worth, Texas. (Tr. at

1

136-54.) On March 9, 2020, the ALJ found that Ross-Bennett has not been under a disability, as defined by the SSA, since the date her application for SSI was filed. (Tr. at 24.) Ross-Bennett then filed a written request for review of the ALJ's decision to the Appeals Council. (Tr. at 177-79.) The Appeals Council granted Ross-Bennett's request for review and, on August 20, 2020, issued an unfavorable decision. (Tr. at 1-6.) Ross-Bennett subsequently filed this civil action under 42 U.S.C. Sec. 405(g), requesting judicial review of the ALJ's decision.

## II.    STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii), (d).[1] Fourth, if disability cannot

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. § 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 416.920(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do

be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* § 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the

---

her past relevant work. *Id.* § 416.920(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 416.920(a)(4)(v).

Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In her brief, Ross-Bennett presents the following issues:

A. Whether the ALJ's RFC determination was supported by substantial evidence and whether the ALJ properly analyzed the opinion of Scott Hilborn, Ph.D. ("Dr. Hilborn"), the consultative examiner ("CE").

B. Whether the ALJ, in determining Ross-Bennett's RFC, failed to discharge her duty to develop the record and obtain a medical opinion regarding Ross-Bennett's hand impairments.

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

## IV. ALJ DECISION

On March 9, 2020, the ALJ found that Ross-Bennett had not engaged in any substantial gainful activity since February 19, 2018, her alleged onset date of disability. (Tr. 12.) At Step Two, the ALJ found that Ross-Bennett had the following severe impairments: obesity, fibromyalgia, degenerative disc disease, osteoarthritic, sciatica, degenerative joint disease, carpal tunnel syndrome, chronic obstructive pulmonary disease, peripheral neuropathy and major depressive disorder. (Tr. at 12.) At Step Three, the ALJ found that Ross-Bennett did not have an impairment or combination of impairments that met or medically equaled any section in the Listing. (Tr. at 13.)

As to Ross-Bennett's RFC, the ALJ stated the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand and walk for a maximum of 4 hours in a standard workday. She can never climb ladders, ropes, or scaffolds; occasionally

4

> climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. She can frequently handle and finger bilaterally. The job cannot require exposure to atmospheric conditions that irritate the respiratory system, eyes, or skin, such as fumes, noxious odors, dusts, mists, gases, or poor ventilation. She can understand, remember, and carry out detailed, but not complex tasks; make work-related decisions; accept instructions; interact appropriately to coworkers, supervisors, and the public; and can adapt to changes. She can maintain the attention, concentration, and work pace to perform detailed, but not complex, tasks independently and appropriately on a regular and continuing basis.

(Tr. 17 (emphasis omitted).) Next, the ALJ opined, "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform." (Tr. at 23 (emphasis omitted).) Consequently, the ALJ found that Ross-Bennett was not disabled. (Tr. at 24.)

## V. DISCUSSION

### A. Dr. Hilborn, the CE

As to the first issue, Ross-Bennett argues that the ALJ erred in determining Ross-Bennett's RFC "for a reduced range of light work with limitations to detailed work," alleging that "the ALJ failed to properly address CE Dr. Hilborn's opinions as she selectively picked her way through the record." (Pl.'s Br. at 7.) Specifically, Ross-Bennett argues that the RFC is inconsistent with Dr. Hilborn's examination. (*Id.* at 8.) In support, Ross-Bennett states:

> Dr. Hilborn opined Plaintiff was limited to understanding and carry-out[sic] simple instructions, simple decisions, and somewhat impaired ability to interact effectively with peers and coworkers. The ALJ found this portion of Dr. Hilborn's opinion unpersuasive as it was "inconsistent with the medical evidence demonstrating [Plaintiff] is cooperative with normal memory, logical thought process, and no evidence distractibility."

(Pl.'s Br. at 8.)

Ross-Bennett also claims that, in contrast to the ALJ's RFC finding, Dr. Hilborn's examination of Ross-Bennett showed as follows:

Plaintiff had impaired working memory as she remembered only one word out of three after a delay; impaired simple attention and concentration as she could not accurately solve a mental arithmetic problem and was unable to spell 'world' backwards; and only fair insight and judgment.

(Pl.'s Br. at 8 (citations omitted).)  Ross-Bennett argues that the "ALJ may not merely state the exam contained normal findings when the plain language of the evaluation demonstrates otherwise." (*Id.*, citing *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994).)

Next, Ross-Bennett claims that the "ALJ's overreliance on benign mental status findings is misplaced, as even the Agency does not afford mental status findings over other, related mental health evidence." (Pl.'s Br. at 9.)  In this way, Ross-Bennett argues that it was "improper for the ALJ to rely wholly on benign findings to the detriment of acknowledging the positive results [from Dr. Hilborn's examination]; particularly as the impairments in question are mental in nature and therefore do not lend themselves to objective findings." (Pl.'s Br. at 8-9.)

Lastly on this issue, Ross-Bennett argues that the ALJ "wholly failed to provide any legally sufficient explanation for [her] analysis of Dr. Hilborn's opinion," and that "this error is harmful as Dr. Hilborn opined Plaintiff was limited to simple work, simple instructions, and would have limitations in interacting with others." (Pl.'s Br. at 9, citing (Tr. 618).)  She asserts that the vocational expert ("VE")'s response is not reliable, as the VE was not given a complete hypothetical because the VE wasn't questioned about Ross-Bennett's ability to interact socially. (*Id.* at 9-10, relying on *DeLeon v. Sec. of Health and Human Servs.*, 734 F.2d 930, 936 (2nd Cir. 1984).)

In response, Defendant asserts the ALJ "thoroughly weighed Dr. Hilborn's consultative opinion and provided specific reasons for finding that Dr. Hilborn's opinions . . . were unpersuasive." (Defendant's Brief ("Def.'s Br.") at 3.)  Specifically, Defendant claims that the ALJ properly weighed Dr. Hilborn's opinion as "inconsistent with the medical evidence

6

demonstrating that Plaintiff was cooperative with normal memory, logical thought process, and no evidence of distractibility." (*Id.* at 4, citing (Tr. 22, 616-18).) Defendant further asserts that "the RFC assessment draws on medical and other evidence for support" and that the RFC assessment "is ultimately and administrative finding reserved to the Commissioner, not a physician." (*Id.*) As such, the Defendant maintains that "the ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion." (*Id.*, citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).)

RFC is what an individual can still do despite his limitations.[2] Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse*, 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give

8

any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." Additionally, "[w]hen a medical source provides one or more medical opinions[1] or prior administrative medical findings, prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5). [The ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate." 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 404.1520c(b)(1).

---

[1] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(a). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at *7.

In this case, the ALJ found, as stated above and relevant to this issue, that Ross-Bennett has the mental RFC as follows:

> [To] understand, remember, and carry out detailed, but not complex tasks; make work-related decisions; accept instructions; interact appropriately to coworkers, supervisors, and the public; and can adapt to changes. She can maintain the attention, concentration, and work pace to perform detailed, but not complex, tasks independently and appropriately on a regular and continuing basis.

(Tr. 17 (emphasis omitted).)  In making the mental RFC determination, the ALJ considered, *inter alia*, the medical evidence in the record and the opinions of State agency psychological consultants Robert B. White, Ph.D., Sallie Boulous-Sophy, Ph.D., as well as psychological consultative examiner, Scott Hilborn, Ph.D., in finding that Ross-Bennett's "allegations of the severity and persistence of her depression are not fully consistent with the medical evidence of record." (Tr. 20.)  The ALJ reasoned as follows:

> [Ross-Bennett] has sporadically sought treatment for symptoms that include depression with anxiety, anxiety attacks, chest pain, difficulty concentrating, anhedonia, increased appetite, feelings of worthlessness, irritability, and difficulty sleeping . . . [that her] symptoms have been conservatively treated with medication and recommendations on weight loss, following a healthy diet, and exercising. Additionally, psychological examinations in the record are generally normal indicating that the claimant is cooperative and well groomed with a normal mood, logical thought process, normal memory, and no mention of distractibility. She is also able to live independently, gets along well with others, interacts regularly with her friend and nephew, goes to the grocery store, watches TV, prepares simple

meals, does not need reminders to take her medication, and handles money. The well controlled symptoms with conservative treatment and claimant's activities of daily living support that she is able to understand, remember, and carry out detailed, but not complex tasks; make work-related decisions; accept instructions; interact appropriately to coworkers, supervisors, and the public; and can adapt to changes. She can maintain the attention, concentration, and work pace to perform detailed, but not complex, tasks independently and appropriately on a regular and continuing basis.

(Tr. 20-21 (citations omitted).)

In providing reasoning for her determination of Ross-Bennett's mental RFC, the ALJ first addressed Drs. White and Boulos-Sophy's findings, stating:

> Claimant has moderate limitations understanding, remember, and applying information; mild limitations interacting with others and adapting or managing herself; can understand, remember, and carry out detailed, noncomplex instructions; make decisions; concentrate for extended periods; interact appropriately with others; and respond to changes.
>
> . . . .
>
> [Drs. White and Boulos-Sophy's opinions are] consistent with the conservative treatment of medication for [Ross-Bennett's] depression and regular psychological examinations in the record that demonstrate the claimant is generally cooperative and well groomed with a normal mood, logical thought processes, normal memory, and no mention of distractibility."

(Tr. 21.) The ALJ then addressed Dr. Hilborn's findings that:

> [Ross-Bennett] is capable of managing all of her daily activities, including hygiene, light cooking, light cleaning, medications, driving and finances," that "her thoughts were logical," and her "thought content was focused on symptoms and loss."
>
> . . . .
>
> [Ross-Bennett's] working memory appeared impaired based on her ability to recall previously presented information, as she recalled only 1 of 3 words after a 5-minute delay. She was able to accurately repeat a phrase. Simple auditory attention and concentration appeared impaired, as she was unable to accurately solve a mental arithmetic problem and, though she correctly spelled the word "world" forward, she misspelled it backward. Based on her responses to similarities items and interpretation of proverbs, abstract reasoning is fair.

.   .   .   .

Social judgment was thought to be fair based on her response to what to do if she found a sealed addressed stamped envelope and other similar questions. Insight into her symptoms and situation and their impact on her daily life appears fair.

.   .   .   .

She is currently taking her psychiatric medication as prescribed, noting it is somewhat helpful . . . She may also benefit from working with the Department of Assistive and Rehabilitative services to explore whatever vocational opportunities may be available to her, given her limitations.

(Tr. at 617-18.)

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. *See* discussion, *supra*. If substantial evidence in the record supports the ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart*, 2005 WL1994289, at *7 (5th Cir. Aug. 19, 2005). At issue, here, is the ALJ's treatment of the medical opinion of CE Dr. Hilborn. As previously stated, the ALJ, in making her determination, found "most of" Dr. Hilborn's opinions persuasive "because they are consistent with the medical evidence of record." (Tr. 22) However, the ALJ found Dr. Hilborn's "opinions that the claimant is limited to simple tasks and that her ability to effectively interact with peers and coworkers is somewhat impaired" as unpersuasive as these opinions are "inconsistent with the medical evidence demonstrating the claimant is cooperative with normal memory, logical thought process, and no evidence [of] distractibility." (*Id.*) The ALJ noted that "the rest of [Dr. Hilborn's] opinions are consistent with the infrequent and conservative treatment the claimant receives in the record for depression and her mostly normal psychological examinations." (*Id.*) Even assuming, without deciding, that the ALJ was required to specifically articulate her evaluation of Dr. Hilborn's opinions using all five factors set forth in 20 C.F.R. 404.1530c(c)(3), the Court finds

12

that the ALJ did so. The reasoning provided by the ALJ looks specifically reflects the supportability and consistency factors, as the ALJ noted that Dr. Hilborn's RFC assessments were not consistent, as a whole, with the treatment records and objective evidence. (Tr. 22.)

Based on the foregoing, the Court finds that the ALJ properly considered the evidence as a whole. Utilizing not only parts of the opinions in the record, but also the other medical evidence in the record, including Dr. Hilborn's opinions, the ALJ appropriately determined Ross-Bennett's RFC. The ALJ discussed the evidence in the record in making her RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse*, 925 F.2d at 790. The ALJ properly weighed Dr. Hilborn's opinions against the other evidence and the record as a whole. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021). Because there is substantial evidence in the record that supports the ALJ's RFC determination and the ALJ properly considered Dr. Hilborn's opinions, remand is not required.

### B. Duty to Develop the Record

As to Ross-Bennett's second issue, she argues that, "[t]he ALJ's RFC determination is unsupported by substantial evidence as the ALJ failed to discharge her duty to develop the record and obtain a medical opinion regarding Plaintiff's hand impairments." (Pl.'s Br. at 1 (emphasis omitted).) Ross-Bennett states that the "[state agency] consultants [did] not consider[] any of the evidence regarding Plaintiff's hand impairments," and, thus, "the ALJ, [found] the state agency consultants' determinations persuasive, [but noted] neither consultant opined any limitations to

13

bilateral fingering." (*Id.* at 2.) Ross-Bennett argues that the ALJ's failure to obtain "any updated

medical opinion to address the severe impairment the state agency consultants did not consider"

is reversible error. (*Id.*)

Ross-Bennett, relying on *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996), states that the

Court "will reverse the decision of an ALJ as not supported by substantial evidence if the claimant

shows (1) that the ALJ failed to fulfill his dusty to adequately develop the record, and (2) that the

claimant was prejudiced thereby." (Pl.'s Br. at 11.)

Specifically, as to *Brock*'s first prong, Ross-Bennett states:

As the ALJ determined Plaintiff's hand impairments would change the State
agency medical consultant's findings, this should have alerted [the ALJ] that she
had no updated opinion regarding Plaintiff's physical impairments. Without an
updated opinion, the ALJ had no medical source to interpret the raw medical data
into functional limitations . . . . her failure to do so is error and fills the first prong
on the *Brock* test.

(Pl.'s Br. at 12 (internal citations omitted).)   Ross-Bennett   states   *Brock*'s   second   prong   is

satisfied, arguing the following:

Plaintiff reported she was dealing with bilateral wrist pain, had tingling in
her hands, and had locking in her fingers. [] Each of the jobs the ALJ identified at
Step 5 required at least frequent handling. [] As the ALJ did not have an updated
medical opinion to evaluate how Plaintiff's hand impairment would affect her
ability to function, she did not have substantial evidence to support her RFC
determination in light of Plaintiff's developing hand impairment. Given that even
the ALJ determined Plaintiff's condition worsened since the state agency consultant
issued their determinations [[], and the record lacked evidence stablishing her
specific limitations, Plaintiff was harmed by the ALJ's failure to obtain an updated
opinion.

(*Id.* (citations omitted).)

In her response, the Commissioner argues that "the record was adequate for the ALJ to

evaluate Plaintiff's bilateral fingering functioning." (Def.'s Br. at 5.) "Specifically, the ALJ found

that the evidence showed Plaintiff would be limited to frequent bilateral fingering, as she

experienced pain and tingling in her bilateral wrists from carpal tunnel syndrome." (Id.)  The

Commissioner further argues:

> Plaintiff's argument that the ALJ had a duty to further develop the record
> simply because the State agency consultants offered opinions without the benefit
> of reviewing the entire record as of the time of the ALJ's decision evidences a
> misunderstanding of the role of the State agency medical consultants . . . . [W]ere
> courts to determine that such circumstances automatically imposed upon ALJs a
> duty to further develop the record, virtually all disability claims would then be met
> with such a judicially imposed requirements.

(Def.'s Br. at 5.)

The ALJ has a duty to fully develop the facts relative to a claim for benefits. *Newton v.*

*Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In

*Anderson v. Sullivan*, the Fifth Circuit held that "[p]procedural perfection in administrative

proceedings is not required.  This court will not vacate a judgment unless the substantial rights of

a party have been affected . . . . The major public policy underling the harmless error rule is to

preserve judgments and to avoid waste of time." 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays*

*v. Bowen*, 837 F.2d 1362, 1363 (5thh Cir. 1988)) (per curiam).  "[P]rocedural improprieties . . .

will therefore constitute a basis for remand only if such improprieties would case into doubt the

existence of substantial evidence to support the ALJ's decision." *Payne v. Colvin*, No. 3:15-CV-

2557-BH, 2016 WL 5661647, at *8 (N.D. Tex. Sept. 28, 2016) (quoting *Alexander v. Astrue*, 412

Fed.Appx. 719, 722 (5th Cir. 2011) (emphasis added); *Morris v. Bowen*, 864 F.2d 333, 335 (5th

Cir. 1988)).  To that extent, "[t]he ALJ's error is harmless if the substantial rights of any party

have not been affected. *Payne*, 2016 WL 5661647, at *8 (citing Alexander, 412 Fed.Appx. at

722).

Based on the foregoing standard, Ross-Bennett's claim that the ALJ failed to adequately

develop the record regarding her hand impairments fails.  While the ALJ found persuasive the state

agency consultants' determinations,  Ross-Bennett claims that the ALJ erred in failing to obtain a

medical opinion to address what the consultants did not—her bilateral fingering limitation.  (Pl.'s Br. at 10.)  Ross-Bennett fails to show that the sought medical opinion—such as a consultative examination—would have produced evidence that would have altered the ALJ's decision.  As with all of Ross-Bennett's alleged impairments, the record contains sufficient medical and non-medical evidence upon which the ALJ based her determination.  Because Ross-Bennett fails to show that she was prejudiced by the ALJ's alleged failure to satisfy his duty to develop the record, remand is not required.

**CONCLUSION**

The ALJ's decision is **AFFIRMED** in all respects.

SIGNED September 21, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/adh